UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

RAUL VEGA

CRIMINAL ACTION

NO. 14-CR-00153-JJB-SCR-1

## RULING

Defendant, Raul Vega, moved for the suppression of all information and/or items intended for use at trial and Defendant's statements (doc. 11). The United States filed a responsive pleading (doc. 13). Subsequently, on February 3, 2015, a hearing was held on the motion to suppress. In accordance with this Court's request, Post-Hearing Memoranda analyzing the testimony and evidence in light of the factors set forth by the United States Supreme Court in *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975) were filed by both sides (docs. 17 and 18).

## FACTUAL BACKGROUND

Defendant has been indicted for violating 8 U.S.C. § 1324(a)(1)(A)(ii) and 8 U.S.C. § 1324(a)(1)(B)(I), transporting illegal aliens for commercial gain. Defendant was arrested on December 10, 2014 on I-12 in Baton Rouge, Louisiana. The arrest was made by agents of the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE").

According to the Defendant, the vehicle he was operating at the time of the stop had not committed a traffic violation (doc. 17, at 1). Instead, Defendant argues that the sole purpose of the stop by the ICE Agent was to check the nationality of the driver and passengers of the vehicle Defendant was operating. *Id*. The agent, "Agent Lively," stated in his report and testimony that his suspicions were aroused based on his observations of the van that Defendant was driving and that formed the basis for the stop of the vehicle. *Id*. at 2. At the time of the stop, Defendant was interrogated by the ICE agents and responded with statements that the United States intends to

1

use at trial against Defendant. *Id*. It is Defendant's argument that the stop of his vehicle and the statements made in response to interrogation were made in violation of Defendant's rights and without proper consent or waiver of his Fourth and Fifth Amendment right and right to consult with counsel. *Id*.

Agent Lively testified that he noticed Defendant's vehicle was a "heavily laden gold Honda Odyssey minivan that appeared to have more passengers than seatbelts at the I-10 I-12 split" (doc. 18, at 1). Agent Lively testified that from his perspective in a stationery vehicle, perpendicular to the interstate, the van was going 60 to 70 miles per hour (doc. 17, at 6). He then pulled onto the interstate in an unmarked vehicle to further investigate (doc. 18, at 1-2). The minivan slowed "dramatically to 40 MPH" as Agent Lively approached. *Id*. at 2. Once alongside the minivan, Agent Lively noticed that the driver, the Defendant herein, was smoking profusely and appeared very nervous and would not look in the Agent's direction despite Agent Lively shining a flashlight into the minivan. *Id*. Agent Lively then noticed the number of passengers appeared to be less than when the minivan drove by his post earlier. *Id*. Once Agent Lively was behind the minivan, he observed a person's head pop up from the luggage area. *Id*. Agent Lively initiated an investigatory stop based on what he observed and his eighteen years of experience as a Border Patrol agent. *Id*. Once he approached the minivan, he saw eight individuals slumped on the floor. *Id*. During this investigatory stop, Defendant was not in custody. Agent Lively claims that the Defendant then told him that he did not think his passengers were legally in the United States. *Id*. The Government argues that there was no testimony or evidence to support Defendant's claim that he was interrogated in violation of his Fifth Amendment rights. *Id*. at n.1.

## **LEGAL STANDARD AND ANALYSIS**

There are several factors, laid out by the United States Supreme Court, to be considered in determining whether a border patrol agent has reasonable suspicion to justify an investigatory stop. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-87 (1975). These factors include the proximity to the border, characteristics of the area in which the agents encounter the vehicle, usual patterns of traffic on the road, arresting agent's previous experience with criminal activity, information about recent border crossings in the area, vehicle's appearance, driver's behavior, and the number, appearance, and behavior of the passengers. *Id*. In *Brignoni*, the one single factor of the Mexican ancestry of the occupants in the car did not justify the agents' belief that the occupants were illegal aliens (doc. 17, at 2). The several factors laid out in *Brignoni* aid in evaluating the totality of the circumstances that were known to the agent at the time of the stop. *Id.*, citing *United States v. Vasquez*, 298 F.3d 354, 357 (5th Cir. 2002). The Fifth Circuit has also held that a border patrol agent on a roving patrol must be aware of "specific articulable facts," together with reasonable inferences from those facts, that warrant a reasonable suspicion that the vehicle is involved in illegal activities, such as transporting undocumented immigrants. *United States v. Chavez-Chavez*, 205 F.3d 145 (5th Cir. 2000). In this Circuit, the factors that may be considered track those in *Brignoni-Ponce*, *supra*, and include consideration of the area's proximity to the border and any information about recent illegal trafficking in aliens or narcotics in the area. *United States v. Hernandez*, 477 F.3d 210 (5th Cir. 2007).

Defendant argues that in light of the totality of circumstances standard and the consideration of the *Brignoni* factors, Agent Lively was not justified in the investigatory stop that he conducted (doc. 17, at 3). Further, Defendant argues that Agent Lively provided insufficient "specific articulable facts" together with reasonable inferences from those facts, as

3

required by the Fifth Circuit in *Chavez-Chavez*, to warrant reasonable suspicion that the vehicle is involved in illegal activities. However, the United States argues, on the other hand, that when looking at the totality of the circumstances and the articulable facts observed by Agent Lively, a reasonable suspicion was satisfied in order to justify an investigatory stop. The Court will discuss the factors and determine how they apply to the arguments of the Defendant and the Government.

    i.      Proximity to the Border

The stop of Defendant's minivan occurred "far from the closest international border," according to Defendant, such that the Court will look at the remaining factors with caution (doc. 17, at 4, citing *United States v. Hernandez-Mandujano*, 721 F.3d 345 (5th Cir. 2013)).

    ii.     Characteristics of the Area in which the Agents Encounters the Vehicle

Agent Lively characterized the I-10 and I-12 corridor, where the Agent was assigned to work that night, as a "major smuggling route for alien smuggling, narcotics smuggling" (doc. 17, at 4, citing Motion to Suppress Hearing, Feb. 3, 2015 p. 8, line 2). Defendant argues that I-10 is a major route for east and west-bound traffic not involved in alien or drug smuggling, and that Agent Lively's observation about traffic moving with illegal purposes is "meaningless but often relied on by agents in justifying stops on I-10" (doc. 17, at 4). As the United States notes, the Fifth Circuit, in a similar case, referred to I-10 as a "major alien-smuggling corridor" (doc. 18, at 4, quoting *United States v. Rico-Soto*, 690 F.3d 376, 380 (5th Cir. 2012)). Therefore, this factor supports the argument that Agent Lively had a sufficiently reasonable suspicion (doc. 18, at 4).

    iii.    Usual Patterns of Traffic on the Road

Agent Lively testified to Defendant's vehicle being the first the Agent stopped on that shift from 8 p.m. to 4 a.m. (doc. 17, at 5). Agent Lively spotted the vehicle in the middle lane of

five lanes of traffic with very little other traffic on the road that evening (doc. 17, at 5, citing Motion to Suppress Hearing, Feb. 3, 2015 p.16, lines 10-25). This testimony does not support any reasonable suspicion that would support a stop.

    iv.    Arresting Agent's Previous Experience with Criminal Activity

Agent Lively stated he has been an agent with United States Border Patrol for 18 years; however, at the time of the investigatory stop, Agent Lively has only been assigned to the patrol of I-10 and I-12 for six months (doc. 17, at 5, citing Motion to Suppress Hearing, Feb. 3, 2015 p. 7, line 9). The United States argues that the observations on the night at issue are seen through the lens of a Border Patrol agent with 18 years of experience (doc. 18, at 5). The agent's experience on this specific road is not what the Court is to consider and is used by Defendant only to distract from the facts that favor a reasonable suspicion. *Id*. This is a factor that leans in the Government's favor.

    v.    Information about Recent Border Crossings in the Area

There was no testimony by Agent Lively about information regarding recent smuggling activity in the area or involving the Defendant's vehicle (doc. 17, at 5). This factor does not support any reasonable suspicion that would support a stop.

    vi.    Vehicle's Appearance

Agent Lively stated that the vehicle raised his suspicions because it was "heavily laden, riding low in the rear and there was a great number of passengers, more than [t]hat vehicle will hold, more than the seat belts that would be in that vehicle" (doc. 17, at 5, citing Motion to Suppress Hearing, Feb. 3, 2015 p. 8, line 17-20). When Agent Lively was asked how he could see that the vehicle was overcapacity he stated, "there's lighting along the interstates at the split. About every 50 yards there's lighting. Also, I'm set up perpendicular to the interstate and I had

my headlights on" (doc. 17, at 5-6, citing Motion to Suppress Hearing, Feb. 3, 2015 p. 9, lines 1-3). Agent Lively testified to being able to count the number of passengers as Defendant's vehicle passed at 60 to 70 miles per hour by the agent's stationary vehicle and from a position of 3 lanes to the right of the Agent's vehicle (doc. 17, at 6). "At 60 miles per hour the vehicle the defendant was driving would have been traveling at 88 feet per second." *Id*. Defendant urges that it is improbable that Agent Lively counted the number of passengers in that short time. *Id*.

The Court agrees that the two facts, that the vehicle was heavily laden and that someone in the rear luggage area popped their head up and then back down, are two facts that should be considered (doc. 17, at 10). The United States argues based on these two facts that a reasonable suspicion requirement is satisfied (doc. 18, at 3). However, as the Defendant points out, a heavily loaded vehicle and a head popping up is an indicator of many things and is not conclusive that illegal activity is going on. These factors do not support any reasonable suspicion that would support a stop.

vii.  Driver's Behavior

This factor is basically the crux of the matter. Agent Lively testified that as he began following Defendant's vehicle, the vehicle was "slowing down dramatically" (doc. 17, at 6, citing Motion to Suppress Hearing, Feb. 3, 2015 p. 9, lines 20-21). In response to this slowing, Agent Lively then pulled to alongside the driver's side of the vehicle to get a better look inside (doc. 17, at 6). Agent Lively rolled down his window and looked inside the cab stating that the "driver and the passenger appeared very nervous" with the driver "profusely smoking a cigarette" *Id*., citing Motion to Suppress Hearing, Feb. 3, 2015, p. 9, lines 20-25). Neither the passenger nor driver looked towards Agent Lively, who then proceeded to shine a flashlight inside the cab of Defendant's vehicle (doc. 17, at 6). The action did grab the attention of the

6

Defendant and the passenger in the cab. *Id*. Agent Lively noted that Defendant's vehicle was travelling at 40 miles per hour in a speed limit area posted for 60 miles per hour. *Id*. Agent Lively stated that he "drove alongside them for about a quarter of a mile[ and] was able to look down at my dash and see my speed" (doc. 17, at 6-8, citing Motion to Suppress Hearing, Feb. 3, 2015 p. 10, lines 8-9). These observations increased Agent Lively's suspicion that the vehicle contained illegal immigrants (doc. 17, at 7).

Agent Lively stated that he was in an unmarked vehicle with no emergency lights on when he shined his standard flashlight through the open passenger window into the cab of Defendant's vehicle (doc. 17, at 7, citing Motion to Suppress Hearing, Feb. 3, 2015 p. 23, lines 15-17). Agent Lively shined the flashlight in order "to see how [the defendant] would respond to it" (doc. 17, at 7, citing Motion to Suppress Hearing, Feb. 3, 2015 p. 24, lines 8 and 15-25). The driver's continuing to look straight forward and not looking at the parallel car is what Agent Lively considered to make Defendant and passenger appear very nervous. *Id*. The Fifth Circuit has found that the issue of a driver looking or not looking at an agent pulled alongside should be accorded little weight because "to find otherwise would put the officers in a classic 'heads I win, tails you lose' situation" (doc. 17, at 7, quoting *Hernandez-Mandujano*, supra, quoting *United States v. Escamilla*, 560 F.2d 1229 (5th Cir. 1977)).

Defendant questions Agent Lively's purpose in shining the flashlight into the cab of the car. If Agent Lively's initial suspicion was raised by the heavily-laden car, then, Defendant argues "it would logically follow that his next investigatory procedure would be to shine his headlights into the vehicle from behind in order to determine if in fact the vehicle was over-capacity" (doc. 17, at 7). Instead, Agent Lively drove parallel to the vehicle and proceeded to shine his flashlight into the cab of the vehicle to determine what the driver's reaction revealed

7

(doc. 17, at 7-8). The more reasonable conclusion, according to Defendant, to explain Agent Lively's actions is that "the agent was trying to determine the nationality of the defendant" (doc. 17, at 8). Defendant argues that "the agent's action to immediately shine the flashlight in the vehicle raises the issue of an attempt to profile the nationality of the driver rather than base the traffic stop on reasonable suspicion." *Id*. It remains unclear to the Defendant whether the agent would have continued to pursue the traffic stop had the driver's nationality been other than Latino. *Id*. It is the Defendant's arguments that an unmarked Chevy Tahoe, like than being driven by Agent Lively, would "cause a reasonable person to appear 'very nervous' and even to smoke profusely." *Id*. A driver decreasing his speed while the same car drove parallel to it and shines a light into it "does not necessarily constitute suspicious behavior." *Id*. When analyzed cautiously, the Agent's observations do not support the conclusion of illegal trafficking. *Id*.

The United States had already acknowledged that the lack of eye contract alone does not equate to reasonable suspicion (doc. 13), but that it is one of several reasons that Agent Lively concluded that the driver appeared nervous (doc. 18, at 5). In an alien smuggling case, nervous behavior can provide reasonable suspicion. *Id*., citing *United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013). The driver was smoking profusely (doc. 18, at 5). The United States also notes that "[a] driver who slows considerably or is maintaining a noticeable slow speed in the presence of law enforcement implies nervousness" *Id*., citing *United States v. Lopez-Martinez*, 25 F.3d 1481, 1486 (10th Cir. 1994). However, in this case, there was no indication that Agent Lively was law enforcement because the car he was driving was unmarked and did not identify him as a member of law enforcement.

    viii.    Number, Appearance, and Behavior of the Passengers

Agent Lively testified that he initially pulled alongside the vehicle not to looking for the passengers, but instead to "take a look at the driver first" (doc. 17, at 9, citing Motion to Suppress Hearing, Feb. 3, 2015 p. 26, lines 7-11). Although it was the fact that the vehicle was overcapacity that caused Agent Lively to initially flag it, the first thing he inspected was the state of the driver and not whether there were too many passengers (doc. 17, at 9). When Agent Lively returned to behind the vehicle, as opposed to driving alongside the vehicle, he "noticed that the passengers that were there before when they passed [his] location were no longer visible" (doc. 17, at 9, citing Motion to Suppress Hearing, Feb. 3, 2015, p. 10, lines 18-21). It was then when Agent Lively noticed a head pop up from behind the rear seat and then go back down (doc. 17, at 9). Then, Agent Lively stated he had no doubt in his mind that this vehicle was carrying illegal immigrants (doc. 17, at 9, Motion to Suppress Hearing, Feb. 3, 2015, p. 11, lines 1-3). Once he conducted a traffic stop, Agent Lively walked around the vehicle shining his light into the vehicle to discover subjects hunkered down on the floorboard with a total of ten passengers in the vehicle, in addition to the driver (doc. 17, at 9).

The factors Agent Lively stated he relied on in addition to observing the heavily-laden vehicle includes "the behavior of the driver, his nervous appearance, the fact that the passengers were in the vehicle before had disappeared once I caught up to the vehicle, the head popping up from behind the rear seat as a I pulled in behind it" (doc. 17, at 9-10, citing Motion to Suppress Hearing, Feb. 3, 2015, p. 33, lines 5-10).

The Government contends that the fact that the vehicle was heavily laden and that someone in the rear luggage area popped their head up and then back down, are two facts that alone satisfy the reasonable suspicion standard (doc. 18, at 3). The Court again disagrees. A passenger's behavior, such as ducking or moving around the vehicle is an admitted factor

favoring reasonable suspicion. *Id.*, citing *United States v. Garcia*, 732 F.2d 1221, 1225 (5th Cir. 1984). But, in this case, the ICE Agent did not stop the van until he had established that the driver was Hispanic. He did not even attempt to determine the number of passengers until he shined his flashlight on the driver.

In summary, the Court finds that all of the evidence in this case boils down to the fact that the ICE Agent did not make any decision to stop the Defendant's van until he had determined that the driver was Hispanic. This was an impermissible conclusion on which to have an investigatory stop. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 886-87 (1975)

## **CONCLUSION**

Therefore, the Court finds that there are a lack of specific articulable facts to support the stop and the several *Brignoni* factors to be considered when looking at the totality of the circumstances. The Court finds that the United States has not satisfied its burden of demonstrating a reasonable suspicion for an investigatory stop.

Therefore, Defendant's Motion to Suppress (doc. 11), in all respects, is **GRANTED**.

Signed in Baton Rouge, Louisiana, on April 15, 2015.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**